IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICKIE R. LOGAN, LJ-7274, )
    Petitioner, )
     )
    v. ) 2:15-cv-1699
     )
     )
JARROD CARUSO, et al., )
    Respondents. )

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of Nickie R. Logan for a writ of habeas corpus (ECF No. 6) be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Nickie R. Logan, an inmate at the State Correctional Institution at Huntingdon has presented a petition for a writ of habeas. Logan is presently serving an eight to seventeen year sentence imposed following his conviction, by a jury on felonious charges of fleeing or attempting to elude an officer, receiving stolen property, unauthorized use of a motor vehicle, resisting arrest, theft by unlawful taking, as well as assorted misdemeanors at Nos. CP-02-CR-4829-2011 CP-02-CR-4530-2011 and CP-02-CR-6403-2011 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on March 19, 2012.[1]

A notice of appeal was filed on April 30, 2012 and the appeal was discontinued on October 20, 2012 at petitioner's request (Appx. pp.89-106, 110). A post-conviction petition was filed on February 4, 2013. The latter petition was denied on June 24, 2014 and an appeal was filed in which Logan raised the following issues:

    1. Can subject matter jurisdiction be established without the Commonwealth showing a nexus of liability?

---

[1] See: Petition at ¶¶ 1-6 as amended by the answer.

2. Did pre-trial/trial counsel render ineffective assistance causing Mr. Logan prejudice in the judicial process and to be convicted of crimes he has not committed?

3. Did the trial court commit misconduct by allowing the prosecution of the same crime in different criminal informations(s), and did the trial court commit error by allowing Mr. Logan to be prosecuted for crime not charged, and did the trial court commit error by failing to instruct the jury?

4. Did the District Attorney knowingly use false testimony and fabricated evidence to infect the jury trial with unfairness and cause Mr. Logan to be convicted of crimes he did not commit?

5. Did the trial court impose sentence(s) that violated Mr. Logan['s] right under double jeopardy, and are the sentences of restitution erroneous and unsupported by proof of actual damage to property owned by Commonwealth, and are the sentences of restitution a double count of the same restitution already imposed?

6. Did the PCRA court commit reversible error(s) in its review of the PCRA and first amended PCRA petition and should this matter be remanded for an evident[iary] hearing? (Appx. p. 208).

The denial of post-conviction relief was affirmed on October 15, 2015 (Appx. pp.296-317). Petitioner did not seek allowance of appeal to the Pennsylvania Supreme Court (Appx. pp.15, 40, 66)(absence of entries).

In the instant petition executed on December 20, 2015 and received December 28, 2015, Logan raises the following issues:

1. Prosecutorial misconduct deprived me of a fair trial under the 14th amendment due process right I have. The District Attorney infected the trial with unfairness from using false testimony to create a false belief in the minds of the jury to consider fabricated items of evidence not presented to the jury or as an exhibit at trial….

2. Ineffective assistance of pre-trial/trial counsel deprived me of the right to fair trial under 14th amendment. Trial counsel failed to conduct pretrial investigation upon information I gave him about witnesses and available evidence that would prove my factual innocence, prove alibi defense, show misidentification, show false evidence, support a mere presence defense, show corrected timeline and factual vehicle I drove regularly; counsel failed to investigate events with judge…

3. The state Superior Court adjudication of my claims is based on an erroneous reading of the record depriving review. (Petition at ¶ 12).

The factual background to this prosecution is set forth in the trial court's August 21, 2012 opinion:

> The Commonwealth presented testimony from three owners of vehicles that ha[d] been stolen. Each witness testified that he or she did not know the Appellant nor give him permission to use the vehicles.
>
> Sergeant Zawischa of the Dormont Police Department testified that on January 28, 2010, shortly after 2:00 a.m., he pursued an individual in a Jeep Cherokee who was traveling the wrong direction on a one-way street. During the pursuit, the driver attempted to flee, abruptly turning right and driving the wrong direction on another one-way street. The driver accelerated, lost control of the vehicle, and struck a parked car. The driver then put the car in reverse gear and struck the Officer's patrol vehicle. Sergeant Zawischa testified that he then observed the driver, whom he identified in court as Appellant, exiting the vehicle and attempted to arrest him. Appellant punched Sergeant Zawischa several times in the chest and fled on foot westward, away from the Dormont area. Sergeant Zawischa went back to the stolen vehicle and observed that the driver's side door was punched in, meaning that the metal was bent. Furthermore, the Officer observed that the vehicle was running, despite the steering column having been broken and the lack of keys in the ignition. The Officer ran the license plate and determined that the car had been stolen. In the abandoned jacket left behind by the driver after he fled, the Officer recovered a Money Mart receipt. Iris Everett, an employee of Money Mart, produced a photograph of the person to whom the receipt was given, and Officer Zawischa identified the person in the photograph as Appellant.
>
> Thomas Bloedel testified that he was the owner of a white 1985 Pontiac Grand Am that was stolen from outside of his Dormont apartment between 2:00 a.m. and 8:00 a.m. on January 28, 2011. Sergeant James Reed of the City of McKeesport Police Department testified that while he was attempting to locate Appellant to question him regarding the Dormont car theft, he observed the stolen Grand Am parked approximately fifty yards from Appellant's home. Sergeant Reed determined that the vehicle had a damaged steering column and had been stolen the same night that the Dormont car theft occurred.
>
> Officer Lee Myers and Officer Daniel O'Hara of the Pittsburgh Police testified that, while on patrol on March 31, 2011, they ran the license place of a 1996 Buick Century and determined that the car was stolen. After a five mile pursuit and a subsequent foot pursuit, Appellant was apprehended. Officer Myers testified that he was able to see Appellant during the entire chase and capture and that no one else was in the stolen car. Newer cars are equipped with a key in the ignition which makes this type of theft nearly impossible. Because the cars stolen were

3

late … 1980's or early 1990's, in addition to the fact that all the thefts occurred within the same area and same time frame and were stolen in the same manner, Detective Soroczak concluded that he believed all three vehicles were stolen by the same individual (transcript references omitted)(App. pp. 96-98).

Respondents concede that the instant petition is timely (Ans. p.13).

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this

Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010). This is a very difficult burden to meet. Harrington v. Richter, 131 S.Ct. 770 (2011).

Petitioner's first claim here is that prosecutorial misconduct occurred through the introduction of false testimony at trial. This issue was presented to the Superior Court as petitioner's fourth post-conviction appeal issue. However, as the Superior Court observed, "prosecutorial misconduct is not cognizable under the PCRA… Therefore, Appellant's fourth claim fails." (Appx. p. 316). For this reason, the issue is procedurally defaulted and need not be reviewed here. Coleman v. Thompson, 501 U.S. 722,750 (1991).

Petitioner second contention is that pre-trial and trial counsel were ineffective. This allegation was raised as the second issue in Logan's post-conviction petition in which he alleged:

> Ineffective assistance of pre-trial/trial counsel deprived me of the right to fair trial under 14th Amendment. Trial counsel failed to conduct pretrial investigation upon information I gave him about witnesses and available evidence that would prove my factual innocence, prove alibi defense, show misidentification, show false evidence; support a mere presence defense; show corrected timeline and factual vehicle I drove regularly; counsel failed to investigate events with judge…

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

5

undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

Petitioner first contends that counsel was ineffective for failing to investigate the inconsistencies in the charges. In Jackson v. Virginia, 443 U.S. 307, 319 (1979), the Court held that what is required is a demonstration that from the evidence presented any rational fact finder could determine guilty beyond a reasonable doubt. At No. 201104829, petitioner was convicted of fleeing or attempting to elude an officer (75 Pa. C.S.A. 3733), receiving stolen property (18 Pa.C.S.A. 3925 §§A),, unauthorized use of a motor vehicle (18 Pa.C.S.A 3925 §§AA), resisting arrest (18 Pa.C.S.A. § 5104) and other lesser offenses involving the Tom vehicle occurring on January 28, 2011; at No. 201104530 of fleeing, receiving stolen property, recklessly endangering another person, and other miscellaneous offenses involving the Barchanowitz vehicle on March 31, 2011, and at No. 201106403 of theft by unlawful taking of movable property (18 Pa.C.S.A. 3921 §A), receiving stolen property and other miscellaneous offenses all arising out of the January 28, 2011 theft of the Blodel vehicle. However, for some inexplicable reason, the latter information also charged the theft of the Tom and Barchanowicz vehicles (Counts 1 and 3).[2] As the trial court observed,

> Evidence regarding the three cases had several legitimate purposes under which each could be admitted in a trial for the other, including evidence of a common scheme, plan or design. The three incidents had a similar plan or design: i.e., on the nights in question, the vehicles were stolen during the same time frame, all stolen vehicles were older model vehicles, a blunt instrument was used to punch out the locks allowing access to each of the cars, and Appellant was identified by the police in the stolen vehicles on two of the incidents. Additionally, items from inside all three vehicles were found missing… Since the evidence would be admissible to show a common plan or pattern, joinder was appropriate … Additionally, jury

---

[2] Although the contents of the information filed at No. 201106403 were bizarre (as the petitioner noted at p. 10 of his response) in that in addition to the Blodel vehicle it also charged the Barchanowitz vehicle which was charged at No. 201104530 and the Tom vehicle which is the basis of the charges at No. 201104829. All three incidents were tried jointly and it is clear from the sentencing statement that no further penalty was imposed at No. 201106403 for events arising from the Tom and Barchanowicz incidents.

6

confusion is unlikely in that the testimony as to each car theft was
easily distinguishable, the crimes were well-defined, and the crimes
themselves were not unduly complicated or requiring advanced
training to understand (Appx. p.100).

Petitioner next alleges that counsel was ineffective for failing to investigate evidence which would have supported an alibi defense. Specifically, petitioner contends that at some time during the periods in question he was on house arrest and at another time he was meeting with his parole agent. The Superior Court addressed these claims in its October 14, 2015 Memorandum:

[Appellant] contends counsel was ineffective for failing to present an
alibi defense. Specifically, he complains that his parole agent,
Michael Kotcho, would have testified that he was with Appellant on
January 28, 2011, six to seven hours after one of the alleged thefts and
that Appellant told him, at that time, that he was at his residence at the
time of the theft. Again, Appellant's argument is devoid of merit…

Appellant's parole officer's testimony would not have removed
Appellant from the scene of the crimes so as to render it impossible
for him to be the guilty party. It may have established where he was
after one of the car thefts, but that would not have affected where he
was during the crime(s) for which he was convicted.

Further, his parole officer could not have testified about where
Appellant told him that he was during the crime, because the
testimony would have been impermissible hearsay… (Appx. pp. 307-
308).

The remainder of petitioner's claims likewise allege that had counsel conducted a thorough investigation, he would have discovered corroboration for the petitioner's allegation that at certain specific times he was at locations other than at the crime scene. Other than the testimony of Sergeant Zawischa testifying that he pursued the petitioner at about 2 a.m. on January 28, 2010, other than a general time frame, the other charges do not contain specific time allegations.

In his memorandum in support of the petition, Logan also contends that counsel was ineffective for "failing to investigate and speak with [the trial court] to determine whether [the court] did in fact meet Mr. Logan at his place of employment and whether the argument and threats she made to Mr. Logan would impair her ability to be an impartial judge…" (ECF. No.7,

p. 23). In addressing this allegation, the post-conviction court wrote "these alleged encounters are completely untrue, frivolous, and unsupported by the record." (Appx. p.199). These factual findings are presumed correct. Felkner v. Jackson, 131 S.Ct. 1305 (2011); 28 U.S.C. § 2254(e)(1).

Petitioner also contends that counsel was ineffective for failing to inform him of his right to testify in his own defense. This claim too, is belied by the record. The post-conviction court wrote "this Court conducted a colloquy to insure Appellant had discussed his right to testify with counsel and that Appellant decided for himself against testifying. (TT.172-177).This decision was knowingly and voluntarily made with the advice and assistance of counsel." (Appx. p. 199).

Petitioner further contends that counsel was ineffective in failing to request a jury instruction on receiving stolen property and failing to object to other instructions. (ECF No. 7 p.31). In reviewing this claim, the Superior Court observed that a challenge to jury instructions in not cognizable in a post-conviction petition, but also wrote that under state law,

> We note that counsel was not ineffective for failing to object to these jury instructions. The court properly instructed the jury on the crime of receiving stolen property. N.T., 1/30-2/1/15, at 243-246. The court then gave the jury proper instructions on possessing an instrument of crime. **Id.** at 250-251. In its concluding sentence, however, the court misspoke and uttered the phrase to which Appellant refers above, naming the count as "receiving stolen property" rather than possessing an instrument of crime. **Id.** This, however, was harmless error. The jury convicted Appellant of receiving stolen property, but acquitted Appellant of possessing an instrument of crime. The crime of receiving stolen property does not require possessing an instrument of crime. 18 Pa.C.S. §3925. Therefore, despite Appellant's contention, the jury permissibly convicted him of receiving stolen property even though it acquitted him of possessing an instrument of crime. (Appx. p. 316 f.n.22).

As a matter of state law, this claim is not subject to review here. Swarthout v. Cooke, 131 S.Ct. 859 (2011). Thus, counsel cannot be deemed to have been ineffective where, as here, no prejudice resulted.

Petitioner also contends that counsel was ineffective for failing to challenge the imposition of multiple sentences for the same offense. While information Number 201106403 was sloppy, the record clearly demonstrates that petitioner never received multiple punishments sentences for each of the events surrounding each of the three vehicles involved in his

prosecution. For this reason, his allegation is simply belied by the record and does not support any basis for relief.

Petitioner, final issue is that the Superior Court erred in the adjudication of his claims. This Court does not sit as an appellate court to review alleged errors by the Superior Court, but rather such matters are properly addressed by the state Supreme Court. Swarthout v. Cooke, supra. For this reason, the issue is meritless.

Because the petitioner has failed to demonstrate that his convictions involved violations of the laws of the United States as determined by the Supreme Court, nor involved an unreasonable application of those determinations, he is not entitled to relief here. Accordingly, it is recommended that the petition of Nickie R. Logan for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date and mailing them to United States District Court, 700 Grant Street, Pittsburgh PA 15219-1957. Failure to file timely objections will waive the right to appeal.

Respectfully submitted,
s/ Robert C. Mitchell

Filed: August 9, 2016						United States Magistrate Judge